539 S.E.2d 703

In the Matter of the ESTATE OF William D. HOLDEN, Sr.

William D. Holden, Jr., as Personal Representative for the Estate of William D. Holden, Sr., Petitioner,

v.

Zachary David Holden and Julia Lynn Holden, Minors, through their Guardian ad litem, Allan E. Fulmer, Jr., Respondents.

No. 25215.

Supreme Court of South Carolina.

Heard Oct. 31, 2000.
Decided Nov. 27, 2000.

Daniel K. Felker of Law Offices of Daniel K. Felker, of Columbia, for petitioner.

James B. Richardson, Jr., of Richardson & Birdsong, and Allan E. Fulmer, Jr., of Columbia, for respondents.

BURNETT, Justice:

This is a probate matter involving the validity of two disclaimers of interest in an estate and the validity of two documents revoking the disclaimers. The decision of the Court of Appeals is affirmed as modified.

## FACTS

William Holden, Sr., (Father) died intestate on January 3, 1992. He was survived by his wife Julia S. Holden (Mother), two sons Petitioner William Holden, Jr., and Robert Holden (Sons), and one grandchild. A second grandchild was born within ten months of Father's death.

After Father's death, Sons filed disclaimers of their interests in Father's estate. In relevant part, the disclaimers state: "I hereby disclaim and renounce any interest in the estate and relinquish any claim I may have to it." Their attorney's letter accompanying the filing describes the disclaimers as "Disclaimers of the decedent's children in favor of the decedent's spouse." The personal representative subsequently distributed the proceeds of the estate to Mother.

After reviewing the estate's closing documents, the probate court informed the personal representative that, as a result of Sons' disclaimers, Respondents Zachary David Holden and Julia Lynn Holden (Grandchildren), as Father's lineal descendants, may inherit a portion of the estate.[1] To avoid this unintended result, each Son executed a document entitled "Revocation and Withdrawal of Disclaimer" which provides, in part: "... [i]t was my intent in entering into this said Disclaimer and Renunciation of Interest to disclaim and renounce my intestate interest in favor of [Mother] ... the spouse of [Father], so that she would become the sole heir of the Estate; ...".[2]

The probate court appointed a guardian ad litem for Grandchildren and conducted a hearing to determine the validity of

---

1. S.C.Code Ann. § 62–2–801(d) (1987) provides "... the disclaimed interest shall be transferred (or fail to be transferred, as the case may be) as if the disclaimant had predeceased the date of the effectiveness of the transfer of the interest; the disclaimer shall relate back to the date of effectiveness for all purposes ...". Where the transferor died intestate, the date of effectiveness of the transfer of the disclaimed interest is the date of the transferor's death. § 62–2–801(e)(1).

 Under the intestacy statutes, one-half of the decedent's estate passes to the surviving spouse and one-half passes to the decedent's issue. § 62–2–102(2). "Issue" is defined as all lineal descendants. § 62–1–201(21).

2. The revocations were filed almost thirteen months after the disclaimers were filed.

the disclaimers and revocations. The probate court held Sons' disclaimers were valid for federal tax law purposes and the revocations were ineffective. The court ordered 50% of the estate's assets distributed to Grandchildren.

The circuit court held the attorney's filing letter accompanying the disclaimers expressly provided Sons intended to direct their interest in the estate to their Mother. Concluding this intention was contrary to applicable provisions of the Internal Revenue Code, the circuit court held the disclaimers ineffective. In a two to one decision, the Court of Appeals held the disclaimers were valid and reversed the circuit court. *Estate of Holden v. Holden*, 336 S.C. 456, 520 S.E.2d 322 (Ct.App. 1999).

## ISSUES

I. Did the Court of Appeals err by determining Sons filed valid disclaimers of their interest in their Father's estate?

II. Did the Court of Appeals err by failing to rule on Sons' additional sustaining ground that Sons effectively revoked their disclaimers?

III. Did the Court of Appeals err by refusing to apply equity principles to set aside the disclaimers?

## DISCUSSION

The General Assembly established the statutory scheme for the disclaimer of property interests in South Carolina. *Pate v. Ford*, 297 S.C. 294, 376 S.E.2d 775 (1989) (discussing the predecessor statute to § 62–2–801). To disclaim an interest in property, a transferee must comply with that scheme. *In the Matter of Will of Hall*, 318 S.C. 188, 456 S.E.2d 439 (Ct.App. 1995). The General Assembly stated its intent in enacting the statutory scheme for disclaimers as follows:

> to clarify the laws of this State with respect to the subject matter hereof in order to ensure the ability of persons to disclaim interests in property without the imposition of federal and state estate, inheritance, gift, and transfer tax-

es. This provision is to be interpreted and construed in accordance with, and in furtherance of, that intent.

S.C.Code Ann. § 62–2–801(f) (1987).

Under the probate code, a person may disclaim an inheritance as follows:

> In addition to any methods available under the existing law, statutory or otherwise, if a person ..., as a disclaimant, makes a disclaimer as defined in § 12–16–1910 of the 1976 Code, with respect to any transferor's transfer (including transfers by ... intestacy...) to him of any interest in ... property, ... the interest ... is considered never to have been transferred to the disclaimant.

S.C.Code Ann. § 62–2–801(a) (Supp.1999).

Section 12–16–1910 addresses the effect of a disclaimer of property interests for purposes of estate taxes. It provides "if a person as defined in Section 62–2–801 makes a disclaimer as provided in Internal Revenue Code Section 2518 with respect to any interest in property, this chapter applies as if the interest had never been transferred to the person." § 12–16–1910 (Supp.1999).

In relevant part, Internal Revenue Code § 2518 defines a "qualified disclaimer" for purposes of federal estate and gift tax laws as follows:

> **(a) General rule.**—For purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.
>
> **(b) Qualified disclaimer defined.**—For purposes of subsection (a), the term "qualified disclaimer" means an *irrevocable and unqualified refusal* by a person to accept an interest in property but only if—
>
> (1) such refusal is in writing,
>
> ...
>
> (3) [the disclaimant] has not accepted the interest or any of its benefits, and
>
> (4) *as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer* and passes either—

**(A)** to the spouse of the decedent, or

**(B)** to a person other than the person making the disclaimer.

26 U.S.C.A. § 2518 (1989) (underline added).

A United States Treasury Department regulation interprets Internal Revenue Code § 2518(b)(4) as follows:

*Passage without direction by the disclaimant of beneficial enjoyment of disclaimed interest*—(1) *In general.* A disclaimer is not a qualified disclaimer unless the disclaimed interest passes without any direction on the part of the disclaimant to a person other than the disclaimant ... If there is an express or implied agreement that the disclaimed interest in property is to be given or bequeathed to a person specified by the disclaimant, the disclaimant shall be treated as directing the transfer of the property interest.

26 C.F.R. § 25.2518–2(e)(1) (1998).[3]

 "The requirement that the disclaimed property pass "without any direction" from the person making the disclaimer means that the disclaimer must result in a valid passing of the disclaimed interest ... by operation of state law." *DePaoli v. Comm'r,* 62 F.3d 1259, 1260–61 (10th Cir.1995); *see Estate of Lute v. U.S.,* 19 F.Supp.2d 1047 (D.Neb.1998); *Estate of Gorre v. Comm'r,* T.C. Memo. 1994–331, 1994 WL 379246 (1994). The "without any direction" requirement is satisfied "only if the interest passes to the ultimate recipient by virtue of the instrument of transfer or by operation of law; it prevents the disclaimant from designating a beneficiary." 5 Boris I. Bittker and Lawrence Lokken *Federal Taxation of Income, Estates & Gifts* § 121.7.6 (2nd ed.1993); *see In re Estate of Lyng,* 608 N.W.2d 316 (S.D.2000) (by directing the destination of attempted disclaimed assets, the alleged disclaimant demonstrates acceptance rather than rejection of the property).

 In addition, a qualified disclaimer must also meet any state law requirements. *Delaune v. U.S.,* 143 F.3d 995, 1001 (5th Cir.1998) ("[T]he clear terms of § 2518(b)(4) necessarily

---

**3.** *But see* Treas. Reg. 25.2518–2(e)(4) (the "without direction" requirement is not violated by precatory language in the disclaimer naming the takers of disclaimed property if the language has no effect under local law).

require the disclaimer itself be valid under state law, because only in such a situation can it be said that the interest passes 'as a result of the refusal' and 'without any direction on the part of the person making the disclaimer'."); *Estate of Bennett,* 100 T.C. 42, 67, 1993 WL 19583 (1993) ("[T]here must be a valid passing of an interest under State law requirements before a valid passing of an interest can be considered to have occurred for Federal estate tax law purposes."); [4] *see United States v. Irvine,* 511 U.S. 224, 237–38, 114 S.Ct. 1473, 128 L.Ed.2d 168 (1994) ("... although state law creates legal interests and rights in property, federal law determines whether and to what extent those interests will be taxed.").

## I.

■ Sons argue the Court of Appeals erred by holding their disclaimers met the requirements of qualified disclaimers under I.R.C. § 2518(b)(4). Specifically, Sons argue their intention to direct their interests is apparent from 1) their attorney's filing letter accompanying the disclaimers, 2) the fact that two of the three heirs disclaimed their interest, indicating an intent to direct the disclaimed interest in favor of the third heir, and 3) their revocations once they realized the disclaimers might not transfer their interests to Mother. They assert each of these factors suggest an implied agreement to disclaim their interests in favor of Mother, that parol evidence of these factors was properly admitted without objection before the probate court, and that their disclaimers are ineffective. We disagree.

## A.

■ "The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary or explain the written instrument." *Gilliland v. Elmwood Properties,* 301 S.C. 295, 302, 391 S.E.2d 577, 581 (1990). Where a

---

4. *But see* 26 U.S.C.A. § 2518(c)(3) (a written transfer of the transferor's entire interest to someone who would have received the property pursuant to state law had the transferor made a qualified disclaimer is treated as a qualified disclaimer).

written instrument is unambiguous, parol evidence is inadmissible to ascertain the true intent and meaning of the parties. *Penton v. J.F. Cleckley & Co.*, 326 S.C. 275, 486 S.E.2d 742 (1997).

The parol evidence rule is a rule of substantive law, not a rule of evidence. Accordingly, admission of evidence violating the parol evidence rule is legally incompetent and should not be considered even if no objection is made at trial. *Penton v. J.F. Cleckley & Co., supra; Muckelvaney v. Liberty Life Ins. Co.*, 261 S.C. 63, 198 S.E.2d 278 (1973).

The express language of Sons' written disclaimers is unambiguous. The disclaimers do not direct the transfer of Sons' interests in Father's estate. It is undisputed that, based on the written disclaimers alone, Sons' interests pass by operation of state law (the descent and distribution statutes) to Grandchildren as lineal descendants of Father. *See* Footnote 1.

Neither Sons' attorney's letter filed with the disclaimers nor the fact that two of the three intestate heirs filed a disclaimer (suggesting a desire to direct their interests to the third heir) were admissible to explain or contradict the written disclaimers. Both factors are extrinsic evidence created contemporaneously with or prior to the written disclaimers. *Gilliland v. Elmwood Properties, supra.* Even though Grandchildren failed to object to this parol evidence, the evidence is nonetheless incompetent. It would have been improper for the probate court to consider the evidence to contradict or explain the disclaimers. *Penton v. J.F. Cleckley & Co., supra.*

Finally, Sons' revocations thirteen months after the filing of their disclaimers are not parol evidence. Nonetheless, the revocations were not proper evidence of Sons' intent in filing the disclaimers. The revocations were filed to correct Sons' mistake of law. Since equity will not correct a mistake of law, *See* Discussion III, it would have been improper to consider the revocations as evidence of Sons' intent in filing the disclaimers in the first instance.[5]

---

5. Sons argue two alternative theories. First, they assert the revocations were not necessary to cancel the disclaimers but to establish the

Since Sons offered no competent evidence that they directed their interests in favor of Mother, the disclaimers met the requirements of I.R.C. § 2518(b)(4), and their interests passed to Grandchildren by operation of state law.

## B.

Sons rely heavily on the second sentence of Reg. § 25.2518–2(e)(1) in support of their argument that they impliedly agreed to direct their disclaimed interests to Mother. This portion of the regulation is inapplicable in this case.

According to a federal estate taxation treatise, the second sentence of the regulation means, in relevant part, "the disclaimant is deemed to designate the beneficiary if the initial taker of the disclaimed property agrees, either expressly or impliedly, to give or bequeath it to a person specified by the disclaimant." Bittker and Lokken *Federal Taxation of Income, Estates & Gifts* § 121.7.6, *supra.*

The second sentence of Reg. § 25.2518–2(e)(1) is inapplicable to the present case. The second sentence of the regulation applies to a disclaimant who directs subsequent transfers of his interest through either express or implied agreements with the initial taker. There was no evidence Sons had an agreement with Grandchildren to pass their inherited interests to Mother.

Instead, the first sentence of the regulation which states "a disclaimer is not a qualified disclaimer unless the disclaimed interest passes without any direction on the part of the disclaimant . . .", is applicable. As Sons presented no competent evidence establishing they directed their interests to Mother, their disclaimed interests passed by operation of state law. The Court of Appeals properly held Sons executed qualified disclaimers pursuant to I.R.C. § 2518, S.C.Code Ann. § 62–2–801(a), and S.C.Code Ann. § 12–16–1910.

## II.

Sons assert the Court of Appeals erred by failing to consider and rule on the validity of their revocations as an additional sustaining ground. We disagree.

disclaimers were invalid. Second, they claim the revocations were necessary to cancel the valid disclaimers. *See* Discussion II.

Since the Court of Appeals held Sons' disclaimers were disclaimers within the meaning of § 12–16–1910, it necessarily concluded the disclaimers were irrevocable. As mentioned above, a person may make a disclaimer as defined in § 12–16–1910. Section 12–16–1910 requires the disclaimer to meet the terms of a qualified disclaimer as set forth in I.R.C. § 2518. I.R.C. § 2518 mandates the disclaimer be irrevocable. 26 C.F.R. § 2518(b). Because South Carolina adopts the federal definition of qualified disclaimer for purposes of its own disclaimer statute, it requires a disclaimer to be irrevocable. Having found Sons' disclaimers were qualified disclaimers, the Court of Appeals also found the disclaimers were irrevocable. *See Northwestern Nat'l Cas. Co. v. Doucette,* 817 S.W.2d 396 (Tex.App.1991) (attempted revocation of otherwise valid disclaimer was ineffective where probate statute defined disclaimer as irrevocable). While the Court of Appeals *could* have ruled on Sons' revocation argument as an additional sustaining ground,[6] Sons suffered no prejudice as the court would have specified the disclaimers were irrevocable.

### *III.*

Sons argue the Court of Appeals should have applied equity principles to set aside their disclaimers. We disagree.

 A proceeding in probate court may either be an action at law or in equity. *Matter of Howard,* 315 S.C. 356, 434 S.E.2d 254 (1993). Whether the action is one at law or in equity is determined by the nature of the pleadings and the character of the relief sought. *Bell v. Mackey,* 191 S.C. 105, 3 S.E.2d 816 (1939). In that Sons want to cancel their disclaimers, this is an equitable matter. *Smith Companies of Greenville, Inc. v. Hayes,* 311 S.C. 358, 428 S.E.2d 900 (Ct.App.1993) (action for cancellation of instrument is action in equity); *see also DuPont v. Southern Nat'l Bank of Houston,* 288 S.C. 312, 342 S.E.2d 590 (1986) (action alleging mistake is action in equity).

 "[E]quitable relief is available where the parties acted under a mistake of fact going to the essence of the particular

---

**6.** Sons' additional sustaining ground was raised in their brief to the Court of Appeals.

transaction, but not if the mistake was one of law." 27A Am.Jur.2d *Equity* § 7 (1996); *Smothers v. U.S. Fidelity and Guar. Co.,* 322 S.C. 207, 470 S.E.2d 858 (Ct.App.1996) (a court of equity will not, in the absence of fraud or undue influence, grant relief from the consequence of a mistake of law). "[R]elief will not be granted where the complaining party took measure to secure knowledge as to the state of the law and, being misinformed, placed himself in the prejudicial situation of which he later complains. Everyone is presumed to have knowledge of the law and must exercise reasonable care to protect his interests." *Id.,* 322 S.C. at 210–211, 470 S.E.2d at 860.

■ A mistake of fact is defined as "an unconscious ignorance or forgetfulness of a material fact, past or present, or of a mistaken belief in the past or present existence of a material fact which did or does not actually exist." 27A Am.Jur.2d *Equity* § 10. Unlike ignorance of the law, ignorance of facts does not "import culpable negligence, since no person can be presumed to be acquainted with all matters of fact . . .". *Id.*

■ "A mistake of law occurs where a person is well acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect." 27A Am.Jur.2d *Equity* § 15.

Sons' execution of the disclaimers was not the result of a mistake of fact. Sons were fully aware of all facts (they were aware of the existence of at least one of the Grandchildren at the time they filed the disclaimers), but they did not realize the legal consequences of their disclaimers. Sons' error was a mistake of law and is not subject to equitable relief. *Webb v. Webb,* 171 W.Va. 614, 301 S.E.2d 570 (1983) (son's error in executing disclaimer of interest by intestate succession in an attempt to vest title to his share of the estate in decedent's widow was mistake of law and could not be set aside on grounds of mistake).

The decision of the Court of Appeals is **AFFIRMED.**

MOORE, Acting C.J., WALLER, PLEICONES, JJ., and Acting Justice L. HENRY McKELLAR, concur.