**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

NCP Pilgrim, LLC, Respondent,

v.

Mary Lou Cercopely and David S. Clancy, Appellants.

Appellate Case No. 2020-001168

Appeal From Dorchester County
James E. Chellis, Master-in-Equity

Unpublished Opinion No. 2023-UP-293
Submitted June 1, 2023 – Filed August 16, 2023

**AFFIRMED**

Robert Bratton Varnado, of Brown & Varnado, LLC, of Charleston, for Appellants.

Russell Pierce Patterson and Lauren Patterson Williams, both of Russell P. Patterson, PA, of Hilton Head Island, for Respondent.

**PER CURIAM:** In this foreclosure action, Appellants Mary Lou Cercopely and David Sean Clancy argue that the master-in-equity erred by ruling that the Financial

Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) does not deprive the court of subject matter jurisdiction. We affirm.

## FACTS

On June 10, 2004, Barbara Clancy (Barbara) purchased commercial property in Summerville (the Property). Barbara's son, David S. Clancy (Clancy) executed a Home Equity Variable Draw Agreement with Carolina Federal Savings Bank (CFSB) for $258,840 secured by a mortgage (the Mortgage) executed by Barbara. Barbara and Clancy signed two mortgage modifications, the first on August 13, 2009 and the second on June 24, 2010. On June 8, 2012, CFSB was closed by the Office of the Comptroller of the Currency, and the Federal Deposit Insurance Company (FDIC) was appointed receiver. On July 5, 2012, the FDIC notified Clancy that he and his mother were in default due to missed payments on the mortgage.

On October 13, 2012, Barbara passed away, leaving her interest in the Property to her two children, Clancy and Mary Lou Cercopely (collectively, Appellants). Appellants continued to make payments on the loan until January 14, 2013, then defaulted by failing to make the required monthly payments. Appellants were again notified that they were in default on their mortgage obligations in a letter dated July 17, 2017.

In the meantime, on December 11, 2012, the FDIC assigned the Mortgage to CRE/ADC Venture 2012-1, LLC (CRE/ADC) through a structured transaction. On August 15, 2018, CRE/ADC sold and assigned the Mortgage to NCP Pilgrim, LLC (NCP).

On October 25, 2018, NCP informed Appellants that it had recently taken ownership of their mortgage loan, was aware that Appellants were in default on their mortgage obligations, and requested payment of the $430,391.52 outstanding. On November 15, 2018, after Appellants failed to respond to NCP's demand letter, NCP filed a summons, complaint, and *lis pendens* against Appellants, requesting the court grant a foreclosure on the Property along with costs and expenses. On January 4, 2019, the action was referred to the Dorchester County Master-in-Equity pursuant to Rule 53(b), SCRCP. On January 22, 2019, Appellants timely filed an answer with counterclaims.

On January 28, 2020, a foreclosure trial was held before the master. At trial, Appellants waived all defenses and counterclaims apart from subject matter jurisdiction.

After trial, the master found that he had jurisdictional authority to hear NCP's foreclosure claims. He awarded a judgment against Appellants in the sum of $367,963.19, plus interest of $35.85 per day from January 29, 2020. In a supplemental decree of sale and foreclosure issued thereafter, Appellants were also ordered to pay $41,110.82 in attorney's fees and costs. This appeal followed.

## ISSUES ON APPEAL

I.  Did the master err in finding that Appellants waived all defenses and counterclaims aside from the issue of subject matter jurisdiction?

II. Did the master err in finding that he had subject matter jurisdiction to rule on NCP's claims?

## STANDARD OF REVIEW

"Actions for foreclosure or the cancellation of instruments are actions in equity." *Wilder Corp. v. Wilke*, 324 S.C. 570, 576, 479 S.E.2d 510, 513 (Ct. App. 1996), *aff'd*, 330 S.C. 71, 497 S.E.2d 731 (1998). However, "[t]he issue of whether a federal statute preempts state law is a question of law." *Eggleston v. United Parcel Serv., Inc.*, 428 S.C. 373, 378, 834 S.E.2d 713, 715 (Ct. App. 2019). Further, "[t]he question of subject matter jurisdiction is a question of law." *Seels v. Smalls*, 437 S.C. 167, 172, 877 S.E.2d 351, 353 (2022) (quoting *Byrd v. McDonald*, 417 S.C. 474, 478, 790 S.E.2d 200, 202 (Ct. App. 2016)). "The appellate court 'may make its own ruling on a question of law without deferring to the circuit court.'" *Eggleston*, 428 S.C. at 378, 834 S.E.2d at 715 (quoting *Henderson v. Summerville Ford-Mercury Inc.*, 405 S.C. 440, 446, 748 S.E.2d 221, 224 (2013)).

## LAW/ANALYSIS

### I.  Waiver

As an initial matter, Appellants question the validity of the assignment of the loan documents to NCP and the validity of the order referring this case to the master. At trial, Appellants expressly waived all arguments unrelated to the master's subject matter jurisdiction. As a result, Appellants' arguments related to any other issues are unpreserved for our review. *See McCrea v. City of Georgetown*, 384 S.C. 328, 332, 681 S.E.2d 918, 921 (Ct. App. 2009) ("A stipulation is an agreement, admission, or concession made in judicial proceedings by the parties or their attorneys and is

binding upon those who make them. The court must accept stipulations as binding upon the parties." (citation omitted)).

## II.     Subject Matter Jurisdiction

Appellants argue that the master lacked subject matter jurisdiction to hear Respondent's foreclosure action under FIRREA. We disagree.

"An assignee stands in the shoes of its assignor." *Bank of Am., N.A. v. Draper*, 405 S.C. 214, 220, 746 S.E.2d 478, 481 (Ct. App. 2013). *See also* S.C. Code Ann. § 36-3-203(b) (Supp. 2022) ("Transfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument . . . ."). "[T]he assignment of a note secured by a mortgage carries with it an assignment of the mortgage . . . ." *Hahn v. Smith*, 157 S.C. 157, 167, 154 S.E. 112, 115 (1930).

Appellants assert that the following section of FIRREA limits the master's jurisdictional authority:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over–
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). In essence, Appellants believe the above section divests South Carolina courts of subject matter jurisdiction over this action because CFSB was a "depository institution" and the FDIC was appointed receiver of its assets. FIRREA is inapplicable for two reasons.

### A. The Assignment to NCP

First, FIRREA does not apply when the FDIC relinquishes its rights to a mortgage and note in an assignment agreement.

On August 15, 2018, NCP assumed the Mortgage along with all rights, title, and interest previously held by CRE/ADC. After the assignment agreement was executed, CRE/ADC was completely divested of any right to foreclose or seek relief in relation to the mortgage. *See* § 36-3-203(b) ("Transfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument . . . ."); *Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 335 S.C. 635, 640, 518 S.E.2d 44, 46 (Ct. App. 1999) ("When a contract is assigned, the assignee should have all the same rights and privileges, including the right to sue on the contract, as the assignor."). This was true even though the FDIC owned a majority interest in CRE/ADC at the time of execution. *See Deutsche Bank Nat'l Tr. Co. v. Burke*, 902 F.3d 548, 552 (5th Cir. 2018) (finding that "[b]ecause the FDIC could sell 'all the real and personal property' of [a failed bank], it necessarily had power to assign the rights under the note, including the foreclosure rights" (citation omitted) (quoting 12 U.S.C. § 192)).

Under FIRREA, state courts are deprived of their jurisdiction over a claim if it is one of three types of claims. The first is a claim involving "the assets of any depository institution for which the [FDIC] has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)(i). The second involves "assets which the [FDIC] may acquire from itself as [a] receiver[.]" *Id.* The last category of claims covered by the statute are those "relating to any act or omission of such [depository] institution or the [FDIC] as receiver." § 1821(d)(13)(D)(ii).

The first type of claim is not at issue in the current case because when the assignment agreement between CRE/ADC and NCP was properly executed, the Mortgage could no longer be considered an asset of CFSB and the FDIC could no longer be considered the Mortgage's receiver. *See* 12 U.S.C. § 1821(e)(6)(C)(ii) (stating that a receiver has no further liability in respect to a mortgage that was assigned or sold). The second type of claim is also not at issue because the assignment agreement with NCP represented an unequivocal relinquishment of all rights and obligations related to the mortgage. The FDIC may not now reacquire the mortgage, because it is no longer the mortgage's receiver. The final category is likewise not at issue because NCP never filed a claim against the FDIC based on the FDIC's acts or omissions. Therefore, the master properly held he had jurisdiction to hear NCP's foreclosure action.

B. <u>FIRREA's Manifest Purpose</u>

Second, FIRREA is inapplicable because subjecting foreclosure actions against defaulting mortgagors to the provisions of FIRREA would be antithetical to FIRREA's manifest purpose.

"The true guide to statutory construction is not the phraseology of an isolated section or provision, but the language of the statute as a whole considered in the light of its manifest purpose." *Silva for Est. of Silva v. Allstate Prop. & Cas. Ins. Co.*, 424 S.C. 512, 517, 818 S.E.2d 753, 756 (2018) (quoting *Jackson v. Charleston Cnty. Sch. Dist.*, 316 S.C. 177, 181, 447 S.E.2d 859, 861 (1994)).[1]

"FIRREA was enacted in 1989 as an emergency measure to enable the . . . [FDIC] to resolve and liquidate expeditiously the hundreds of failed financial institutions throughout the country." *Tillman v. Resol. Tr. Corp.*, 37 F.3d 1032, 1035 (4th Cir. 1994). "Congress required persons making claims *against* a failed financial institution or seeking to adjudicate rights against [those institutions] to present their claims first to the receiver for resolution." *Id.* (emphasis added). Indeed, section 1821(d) only references claims against failed financial institutions or their receivers. *See e.g.* § 1821(d)(5)(A)(i) (defining the time period in which the FDIC must allow or disallow "any claim against a depository institution . . . with the [FDIC] as receiver[]"); § 1821(d)(6)(A) (explaining that "with respect to any claim against a depository institution for which the [FDIC] is receiver[,] . . . the claimant may request administrative review of the claim . . . or file suit on such claim" in an appropriate United States district court). Also, section 1821(d)(13)(D)'s limitation on judicial review was interpreted as a "jurisdictional bar"—something on which Appellants rely in their brief—because of a concern that "creditors [of failed financial institutions] would opt out of the administrative review[.]" *Tillman*, 37 F.3d at 1035–36. While we recognize that FIRREA's jurisdictional bar is not limited to creditors, we believe it is limited to claims against a failed financial institution or

---

[1] Appellants also rely on *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1901 (2019) to argue that because Respondent was unable to point "specifically to 'a constitutional text or federal statute,'" *id.*, it may not avail itself of the tools of statutory interpretation. This statement subverts the language's meaning when read in its proper context. The *Virginia Uranium* court explained that while courts have discussed various categories of federal preemption, "at least one feature unites them: Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law; a litigant must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law." *Id.* (quoting *Puerto Rico Dep't of Consumer Affairs v. ISLA Petroleum Corp.*, 485 U.S. 495, 503 (1988)). Thus, it is Appellants' rather than Respondent's burden to point specifically to a federal statute that displaces or conflicts with state law.

its receiver and should not be extended to include foreclosure claims against mortgagors.

In the present case, NCP is neither a creditor nor any other type of party seeking to determine its rights against CFSB as a failed financial institution or the FDIC as its receiver. Instead, NCP properly initiated this foreclosure action against Appellants. Therefore, FIRREA's jurisdictional bar is inapplicable to this action.

Accordingly, the decision of the master-in-equity is

**AFFIRMED.**[2]

**WILLIAMS, C.J., and GEATHERS and VERDIN, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.